

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00172-CR

TROY MICHAEL ROBINO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 45773-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

O P I N I O N

When George Dubson attempted to pay for his order with a counterfeit twenty-dollar bill at a fast-food restaurant in Kilgore, police were alerted. While responding to the police dispatch, Sergeant Vance Callahan of the Kilgore Police Department stopped an automobile matching the description of the one occupied by Dubson a short distance from the restaurant. Callahan identified Troy Michael Robino as the driver of the automobile, Dubson as the front-seat passenger, and Krystal Sweeny as the backseat passenger. After Dubson stepped out of the vehicle, an officer noticed a crumpled bit of paper on the passenger front seat. The officer quickly determined that the bit of paper was a counterfeit twenty-dollar bill, and a search of the vehicle ensued that yielded, *inter alia*, additional counterfeit currency and a small amount of methamphetamine. As a result, Robino was charged with, and convicted of, forgery[1] and possession of a controlled substance (methamphetamine) in an amount of less than one gram.[2] In this case,[3] Robino appeals his forgery conviction, for which he was sentenced to forty years' imprisonment.[4]

In a consolidated brief addressing both cases, Robino contends that the trial court erred in denying his motion to suppress. Because we find that the trial court did not abuse its discretion in denying the motion to suppress, we will affirm the trial court's judgment.

---

[1] *See* TEX. PENAL CODE ANN. § 32.21(b) (West Supp. 2017).

[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (West 2017).

[3] In our case number 06-17-00173-CR, Robino appeals his conviction for possession of a controlled substance, which is addressed in a separate opinion released the same date as this opinion.

[4] Robino's punishment was enhanced by two prior felony convictions.

2

## I.    Background

When the police received the report of Dubson's attempt to pass a counterfeit twenty-dollar bill at a fast-food restaurant in Kilgore, Callahan, Corporal Kevin Stewart, and Officer J.B. Pierce responded to the dispatch. Callahan testified that as he arrived, it was reported that the suspects were in a dark blue automobile going down Richards Street in Kilgore. He saw a vehicle matching the description and initiated a stop, which was about 100 yards from the restaurant. After identifying the occupants, Callahan interviewed Robino, who revealed that he uses methamphetamine and that he had last done so seven days before. Meanwhile, Stewart interviewed the front-seat passenger, Dubson, and saw a crumpled bill on the front passenger seat when Dubson exited the vehicle. After removing Sweeney from the vehicle, Stewart picked up the crumpled piece of paper resembling a currency bill and knew immediately that it was counterfeit by its feel and because it lacked the security measures of real currency. At that point, Robino and Dubson were handcuffed and placed in the back of two different patrol cars as the officers began searching the vehicle. Pierce was sent to the restaurant to interview the witnesses and to view the security camera video recording.

In their initial search of the passenger compartment of the vehicle, the officers found a $CO_2$ pellet pistol under the front passenger seat, a digital scale in the glove compartment, an electric stun gun and a small container of gold paint in the pockets of a jacket located in the driver's seat, along with electronics, wiring, batteries, and coffee filters. In addition, the officers found a number of purses, backpacks, and duffel bags, other personal items, and a large gray tote box secured by a cable and a lock.

3

About an hour into the search of the vehicle, Pierce returned to the scene and, based on witness interviews and the video recording from the restaurant's security camera, he determined that Dubson was the person who attempted to pass the counterfeit bill. At that point, Robino was removed from the patrol car, and his handcuffs were removed. Stewart then asked Robino for consent to search the tote box and the trunk of the vehicle. The officers testified that Robino initially denied consent, but when the officers requested that a canine unit be dispatched, he told the officers to go ahead and search. Nevertheless, the officers waited approximately twenty-five minutes for the canine unit to arrive. Callahan explained that they thought that there may be narcotics in the vehicle because of the occupants' criminal histories and Robino's admission that he had used methamphetamine seven days before and because they found electronics, wiring, batteries, and coffee filters, which were all possessions held by methamphetamine users he had stopped in the past. Stewart testified that during all of this time, at least one officer continued to search the passenger compartment of the vehicle.

When the canine unit arrived, it alerted to the presence of narcotics at several places around the vehicle. The officers then asked Robino which key on his key ring opened the lock on the tote box, he told them, and the box was opened. Inside were partially printed counterfeit bills, a computer with a printer, an accordion file with printed sheets of counterfeit currency, and a briefcase with additional printed sheets of counterfeit currency. When they searched the trunk of the vehicle, they found multiple backpacks, computer components, more counterfeit bills, a desktop computer, ink cartridges, and a small locked safe. The officers asked Robino which key

4

opened the safe, and after he told them, they opened it. Inside the safe were some sex toys and a substance in Ziploc bags that was later identified as methamphetamine.

Video recordings from the officer's in-car dashboard camera and body camera were also played for the trial court. Those recordings tend to confirm the officers' testimony. The video recordings also show that from the beginning of the stop, Robino told the officers without prompting that somebody had burned him the night before by giving him counterfeit money when he sold them an amplifier. Further, prior to conducting the initial search of the vehicle, Stewart informed Robino that they were going to search it because they found the counterfeit twenty-dollar bill. Also, after Dubson was identified as the person who attempted to pass the counterfeit bill that day, Stewart returned to his patrol car to remove the handcuffs from Robino. Stewart then informed Robino that they were still investigating the forgery, and Robino told him that the gray tote box and the trunk contained his personal items. When Stewart asked him if he was saying that they could not search those items, Robino responded, "That is not what I said, I am asking a question." Stewart then stated, "I am asking you if I can search?" And Robino responded, "Yeah, you can search, go ahead . . . You can search wherever you want." Stewart again asked, "You are giving me consent to search?" To which Robino replied, "Yes." The video recordings also showed that the officers did not search the vehicle after they requested a canine unit until after the canine made a positive alert on the car. Robino moved to suppress the evidence, alleging it to be an illegal search.

5

**II.     The Denial of the Motion to Suppress Was Not an Abuse of Discretion**

In his sole issue in this appeal, Robino asserts that the trial court erred in denying his motion to suppress. Analogizing the forgery investigation to a traffic stop, Robino argues that once the officers determined that Dubson was the person who attempted to pass the counterfeit bill, their search regarding the forgery investigation ended, and the officers had no reasonable suspicion to prolong his detention. Therefore, he argues, all of the evidence found in the tote box and in the trunk of the car should have been suppressed. The State responds that under the automobile exception, first recognized in *Carroll v. United States*, 267 U.S. 132 (1925), the officers were authorized to search the entire vehicle and its contents without a search warrant. We agree.

"In a hearing on a motion to suppress evidence, a defendant bears the initial burden of proof to demonstrate that the search and seizure occurred without a warrant." *Hitchcock v. State*, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref'd) (citing *Bishop v. State*, 85 S.W.3d 819, 821 (Tex. Crim. App. 2002)). Once it is shown that a warrantless search occurred, the burden shifts to the State to prove that a warrant existed or that an exception (under either the Fourth Amendment to the United States Constitution or Article I, Section 9, of the Texas Constitution) justified the warrantless search, given the totality of the circumstances. *Id.*; *State v. Steelman*, 93 S.W.3d 102, 106 n.5 (Tex. Crim. App. 2002); *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002). If the State does not satisfy its burden by clear and convincing proof, then the illegally obtained evidence may not be admitted at trial. *See Hitchcock*, 118 S.W.3d at 848; *see also State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (Mansfield, J., concurring). In the present

case, the parties agreed that the search in question was executed without a warrant. Consequently, the State was required to prove the existence of a valid exception to the Fourth Amendment.

We review the trial court's ruling on a motion to suppress for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); *Freeman v. State*, 62 S.W.3d 883 (Tex. App.—Texarkana 2001, pet. ref'd). "In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). The evidence should be viewed "in the light most favorable to the trial court's ruling." *Id.*; *Freeman*, 62 S.W.3d at 886. We "should afford almost total deference to a trial court's determination of the historical facts that the record supports[,] especially when the trial court's fact[-]findings are based on an evaluation of credibility and demeanor." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *see Freeman*, 62 S.W.3d at 886.

However, we review de novo the trial court's application of the law to those facts. *Ross*, 32 S.W.3d at 856. Further, when, as here, no findings of fact are filed, we assume the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *Id.* at 855. If the trial court's decision is correct on any theory of law applicable to the case, we will affirm the decision. *See id.* at 855–56; *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd).

One exception to the warrant requirement is "that the police may lawfully search an automobile if they have probable cause to believe that the vehicle contains evidence of a crime." *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008). The United States Supreme Court

has held that "in cases where there was probable cause to search a vehicle[,] 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.'" *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam) (citing *United States v. Ross*, 456 U.S. 798, 809 (1982)). In *Arizona v. Gant*, the Supreme Court reaffirmed its holding in *Ross* that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, . . . *Ross* . . . authorizes a search of any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 346–47 (2009). It went on to hold that "*Ross* allows searches for evidence relevant to the offenses other than the offense of arrest, and the scope of the search authorized is broader." *Id.* at 347. Under the automobile exception, officers may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched, including any containers or objects found in the vehicle that may conceal the object of the search. *California v. Acevedo*, 500 U.S. 565, 570–71 (1991); *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) (citing *Ross*, 456 U.S. at 825).

Probable cause to search exists when the facts and circumstances within an officer's personal knowledge, or of which the officer has reasonably trustworthy information, would warrant a reasonably prudent person to believe that items connected with criminal activity will be found in a particular place. *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Graves v. State*, 307 S.W.3d 483, 490 (Tex. App.—Texarkana 2010, pet. ref'd); *see Wiede v. State*, 214 S.W.3d 17, 26 (Tex. Crim. App. 2007). In our determination of whether probable cause for a search exists, we examine "the events which occurred leading up to the stop or search, and then [decide] whether

these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas*, 517 U.S. at 696.

Initially, we note that this was not a traffic stop, but rather a stop in furtherance of a reported attempt to pass a counterfeit bill based on information provided by the victim. Therefore, the cases relied upon by Robino, all of which involved searches resulting from stops for traffic violations, are inapposite. In this case, officers immediately responding to a report of an attempt to pass a counterfeit bill located a vehicle matching the description of the suspect's vehicle travelling on the same street which the victim reported it to be travelling, and only a short distance from the location of the offense. Almost immediately, Robino offered a story to the officers about being given counterfeit currency the night before, indicating his and the other occupant's probable involvement in the attempt to pass the counterfeit bill. Then, as the officers were interviewing the occupants, Dubson exited the vehicle, exposing a crumpled counterfeit bill on the front passenger's seat. These facts would warrant an objectively reasonable police officer to believe that items connected with the crime of forgery would be found in the vehicle or its contents. *See id.* Since probable cause existed for the search, the officers were authorized to search the entire vehicle and all of its contents that may conceal evidence of forgery. *See Gant*, 556 U.S. at 346–47.

This authority was not diminished in any way after Dubson was identified as the person who attempted to pass the counterfeit bill. In *Houghton*, the Supreme Court addressed the question of whether officers may search the personal belongings of a passenger when the officers have probable cause to believe the automobile contains contraband. *Houghton*, 526 U.S. at 297. After Wyoming Highway Patrol officers stopped an automobile for speeding, an officer noticed a

9

hypodermic syringe in the driver's pocket. *Id.* at 297–98. When asked why he had a hypodermic needle, the driver responded that he used it to take drugs. After the driver and his passengers were removed from the vehicle, the officers began searching it for contraband. An officer found a purse in the backseat that one of the passengers, Houghton, identified as belonging to her. In searching the purse, the officer found another syringe, other drug paraphernalia, and a small amount of methamphetamine. *Id.* at 298. After the trial court denied Houghton's motion to suppress, a jury convicted her of possession of methamphetamine. *Id.* at 298–99.

The Supreme Court rejected Houghton's contention that the officers could not search her personal belongings found in the vehicle unless they had individualized probable cause to search them. *Id.* at 302. Rather, the court reaffirmed that if there is probable cause to search the vehicle for evidence of a crime, the search extends to all parts of the vehicle and to all its contents that could conceal the object of the search, without regard to ownership. *Id.* at 301. The Court noted that "a car passenger. . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.* at 304–05 (citing *Maryland v. Wilson*, 519 U.S. 408, 413–14 (1997)).

Thus, although Dubson was identified as the person who attempted to pass the counterfeit bill, this neither exonerated Robino nor required the officers to cease their search of the vehicle and its contents for additional evidence of forgery. No officer testified that once Dubson was identified, they ceased searching for evidence of forgery. To the contrary, Stewart informed Robino that they were searching for evidence of forgery before asking his consent to search the tote box and the trunk of the car. Further, a reasonable officer could believe that Robino was also

10

involved in passing the counterfeit bill when he volunteered a story of how they came into possession of the counterfeit currency. While the officers may have been overly cautious in seeking Robino's consent to search the tote box and trunk, and in requesting a canine unit, this caution did not diminish their authority to search the entire vehicle and all of its contents based on probable cause that it contained evidence of forgery.[5] Therefore, any delay in waiting for the canine unit was of no importance.

Based on this record, we find that the trial court did not abuse its discretion in denying Robino's motion to suppress, and we overrule his sole issue.

For the reasons stated, we affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     April 9, 2018
Date Decided:      April 10, 2018

Publish

---

[5]Although not argued by the State at trial or on appeal, we also note that this record would support an implied finding by the trial court that Robino consented to the search of the tote box and the trunk of the car.

11