

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00461-CR

———————————————

PAYTON TYLER ROSS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CR17-0824

---

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

### I. Introduction

Around midnight on August 17, 2017, police stopped a black 2007 Hummer H2 that was going 12 miles over Interstate 20's posted 70 mile-per-hour speed limit. Appellant Payton Tyler Ross was the Hummer's passenger. After the driver, "Betty," consented to Weatherford Police Officer Kayla Callaway's request to search the vehicle, Officer Callaway found a third party's driver's license inside a wallet on the passenger's seat and then two ecstasy pills in a second wallet located inside a purse on the passenger-side floorboard.

Based on those two pills, Ross was charged with possession of a controlled substance in the amount of less than one gram. After the trial court denied her motion to suppress, she pleaded guilty in exchange for four years' deferred adjudication community supervision and a $1,000 fine, among other terms and conditions. In a single issue, Ross complains that the trial court erred by denying her motion to suppress. We affirm.

### II. Suppression Hearing

Officer Callaway was the sole witness who testified at the suppression hearing. Her account mirrored the video footage from her body camera, which the trial court admitted into evidence and reviewed during the hearing.

Immediately after Officer Callaway walked up to the Hummer's driver's side door, she asked Betty for her driver's license and insurance, and while she waited for

Betty to retrieve the items, Officer Callaway asked, "Who's been drinking?" Betty replied, "Not me."[1] Officer Callaway also asked Ross, who was also a minor, for her identification. After receiving both women's IDs, Officer Callaway informed Betty that she had been stopped for speeding. Betty said that the vehicle belonged to her mother.

Officer Callaway asked Betty where they had been going, and Betty replied that she lived just down the road. When Officer Callaway asked Betty where they had been coming from, Betty replied, "Wal-Mart, actually," and said that they had just left Wal-Mart. At that point, Officer Callaway asked them to "hang tight" and walked back to her patrol vehicle with their ID cards.[2] A plainclothes detective, who had been standing by the passenger door of the Hummer with a flashlight, walked back to join Officer Callaway.[3]

---

[1]Betty was subsequently given a citation for "Driving Under the Influence – Minor."

[2]During a traffic stop, an officer may request the driver's license, vehicle registration, and proof of insurance, and the officer may run a computer check on that information. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). An officer may ask drivers and passengers about matters unrelated to the stop's purpose so long as the questioning does not measurably extend the stop's duration. *Id.*

[3]Officer Callaway testified that prior to the traffic stop, she had been waiting on the north side of I-20 to assist some detectives who were watching vehicles at the Love's truck stop "in reference to some narcotics activity." The detectives were in an unmarked vehicle behind the Hummer. When Officer Callaway's body camera footage began, a voiceover dispatch advised, "Primary suspect is not in this vehicle."

3

When Officer Callaway returned to the Hummer, she asked Betty for her age. Betty said that she was 20 years old and shook her head "no" in response to Officer Callaway's second question about drinking. Officer Callaway asked Betty to turn off the vehicle and get out of the car so that she could check her eyes. Officer Callaway inquired as to how Betty knew Ross, and Betty told her that Ross was one of her best friends.

Once Betty was outside of the Hummer, Officer Callaway questioned her again about where they had been coming from, and Betty repeated what she had said before, "Wal-Mart." Officer Callaway asked her how long ago they had left Wal-Mart, adding, "[B]ecause you didn't just leave Wal-Mart." Betty responded that after they left Wal-Mart, they went to Love's.

Officer Callaway then asked Betty if there was any alcohol in the vehicle, and Betty said, "No, feel free to check," and waved expansively toward the vehicle. Officer Callaway also asked if there "[was] anything in the vehicle that [was] not supposed to be?" and Betty replied, "No, ma'am." Officer Callaway then directed Betty to stand by the patrol vehicle and approached the Hummer's passenger side. When she reached the vehicle, Officer Callaway called out, "Ms. Ross, will you step out here for me, please, ma'am?" After Ross emerged, Officer Callaway directed her to stand outside by Betty. Ross complied, and Officer Callaway began her search of the vehicle.

4

Officer Callaway's body camera footage revealed a Michael Kors purse on the passenger-side floorboard, a wallet on the passenger seat, and a plugged-in cell phone on the passenger seat. When Officer Callaway opened the wallet that was on the passenger seat, she found a driver's license that belonged to neither Betty nor Ross.[4]

Officer Callaway walked back to the two women and asked them who "Casey" was. Betty replied, "That's a friend of mine, her ID got lost, and I had it for her . . . . I had it, and so that's why I kept it."[5] Officer Callaway then returned to the vehicle, finished searching the first wallet, and then reached into the Michael Kors purse and pulled out another wallet. Inside that wallet, she found a social security card with Ross's name on it, what appeared to be a male's identification card, and a "small, clear plastic baggie[] with two pills that [she] believed to be Ecstasy or MDMA."

After discovering the two pills, Officer Callaway returned to the two women and handcuffed Ross, telling her that it was "for what [Officer Callaway] found in [her] wallet." On Officer Callaway's way back to the Hummer to continue her search, Betty could be heard telling the plainclothes detective, "I did not know that she had anything on her . . . ."

---

[4]Officer Callaway also looked at a social security card and a bank card in the wallet, but the video does not reflect whose name was on either item.

[5]Casey's license reflected that she lived in Abilene and was older than 21. Betty said that Casey was "in college right now."

During cross-examination, Officer Callaway agreed that at the time Betty consented to the search of the vehicle, Betty was outside the vehicle and Ross was still inside the vehicle. Officer Callaway also testified that she knew when she searched the Michael Kors purse that it belonged to Ross, not Betty, because she had seen a social security card with Ross's name on it.[6] She also agreed that she did not ask Ross for consent to search the purse. And, finally, she agreed that she would have allowed Ross to take her purse out of the vehicle with her if Ross had requested it.

### III. Discussion

In her single issue, Ross complains that the trial court erred by denying her motion to suppress because the scope of Betty's consent to search for alcohol did not extend to Ross's purse and wallet; Betty had neither actual nor apparent authority to consent to the search of Ross's purse and wallet because she did not share access to or have control over or mutual use of Ross's purse; Ross was never asked if she consented to the search and was led away from the vehicle such that she could not observe the search of her purse and wallet; and the State had no other way to meet its burden of probable cause to search the vehicle because the traffic stop was based on speeding and Betty's consent to search was predicated only upon suspicion of DWI. Ross asserts that as soon as Officer Callaway saw that the purse belonged to Ross, she

---

[6]Officer Callaway's body camera footage reflected that she did not see the social security card with Ross's name on it until after she began searching the purse but before she found the two pills.

6

should have stopped and asked Ross if she could search her purse and wallet and that the search became unlawful when Officer Callaway failed to make further inquiry about consent "between seeing [Ross's] i.d. and social security card and the two pills."

The State responds that assuming Ross preserved her complaint for our review when she informed the trial court at the beginning of the hearing that she was "just contesting specifically the scope of the search," the trial court did not err by denying her motion because Ross left her purse in the vehicle, which was subject to a lawful, global grant of consent to search by the driver "and was based on probable cause to believe that evidence of alcohol and identifying information possession was present." Specifically, the State contends that when Ross left the vehicle without her purse, "said purse became just another container inside the vehicle which the driver's global, unfettered and presently unchallenged grant of consent controlled over [Ross's] 'subservient' rights to decide whether a search would take place therein and what form said search would take."

## A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of

the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we defer almost totally to the trial court's rulings on (1) questions of historical fact, even if the trial court determined those facts on a basis other than evaluating credibility and demeanor, and (2) application-of-law-to-fact questions that turn on evaluating credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

**B. Exceptions to Warrant Requirement**

Voluntary consent to a search is an exception to the warrant requirement, and it may be given orally or by action, or shown by circumstantial evidence. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). If the consent to search is open-ended, a reasonable person has no cause to believe that the search will be limited in some way. *Id.* at 449. We must take into account any express or implied limitations or qualifications attending consent that establish the permissible scope of the search in terms of such matters as time, duration, area, or intensity. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). A person's silence in the face of an officer's further actions may imply consent to that further action. *Id.*; *Lemons v. State*, 298

8

S.W.3d 658, 662 (Tex. App.—Tyler 2009, pet. ref'd) ("Appellant's failure to object to Thornhill's continued search of his phone after bestowing on him such general consent to search was an indication that Thornhill's search was within the scope of Appellant's initial consent."). And, generally, with regard to consent to search a vehicle, unless an officer's investigation reveals more information about the social hierarchy within a vehicle, once the driver has consented to the search, no other consent is necessary or pertinent. *State v. Copeland* (*Copeland I*), 399 S.W.3d 159, 164 (Tex. Crim. App. 2013) (listing examples of what might change the positions of the occupants in a vehicle's hierarchy with regard to consent); *see State v. Copeland* (*Copeland II*), 501 S.W.3d 610, 612 (Tex. Crim. App. 2016) ("In the first appeal, we held that Copeland could not deny consent for police to search the vehicle when the driver and registered owner of the vehicle did consent to the search.").

Another exception to the warrant requirement is that police may lawfully search an automobile if they have probable cause to believe that the vehicle contains evidence of a crime. *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008) (citing *Wiede*, 214 S.W.3d at 24), *cert. denied*, 555 U.S. 1154 (2009). Probable cause to search exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. *Id.* If this exception applies, then the police may search "every part of the vehicle and its contents that may conceal the object of the search." *Id.* (citing *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173 (1982)). And police officers with probable cause to search a car for evidence of a crime may inspect

passengers' belongings found in the car that are capable of concealing the object of a search. *Wyoming v. Houghton*, 526 U.S. 295, 307, 119 S. Ct. 1297, 1304 (1999). In our determination of whether probable cause for a search exists, we examine the events leading up to the stop or search and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. *Robino v. State*, 548 S.W.3d 108, 114 (Tex. App.—Texarkana 2018, no pet.) (citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661–62 (1996)).

## C. Analysis

Ross was inside the vehicle when Betty, who was outside of the vehicle, granted consent to search the vehicle to Officer Callaway, first by telling Officer Callaway, in response to her question about alcohol in the vehicle, to "feel free to check," and then stating, in response to Officer Callaway's question about whether there was anything else in the vehicle that was not supposed to be there, that there was not. When Betty told the officer to "feel free to check," she gestured broadly at the vehicle. Therefore, the trial court could have interpreted Betty's physical gesture and her negative response to "anything else" as granting a search that was not limited to the original inquiry about alcohol. *See Valtierra*, 310 S.W.3d at 448. Such an unlimited scope of consent is supported by Betty's lack of objection when the first fruit of Officer Callaway's search was the discovery of an additional driver's license—belonging to

10

neither Betty nor Ross—in a wallet found on the passenger's seat. *See Weaver*, 349 S.W.3d at 526.

Once Officer Callaway found the third-party's driver's license, she had probable cause to search the other containers inside the car for similar contraband.[7] *See* Tex. Penal Code Ann. § 32.51 ("Fraudulent Use or Possession of Identifying Information"), § 37.10(a)(6) (stating that a person commits an offense if he possesses

---

[7]This case is unlike those that Ross cites in which the State failed to prove that a male driver had a legitimate privacy interest in, had exercised equal control over, or had the authority to jointly use a female passenger's purse that was in the car at the time of a search. *Cf. Blythe v. State*, No. 05-07-00813-CR, 2008 WL 4756909, at *3 (Tex. App.—Dallas Oct. 31, 2008, no pet.) (mem. op., not designated for publication) (holding that the trial court should have suppressed the evidence found in appellant-passenger's purse when the State failed to prove that the male driver had a legitimate privacy interest in, exercised equal control over, or had the authority to jointly use appellant-passenger's purse that was in the car at the time of the search to which he had consented); *Stokvis v. State*, 147 S.W.3d 669, 670–72 (Tex. App.—Amarillo 2004, pet. ref'd) (concluding that the search of Stovkis's purse was improper when no one asked her for permission to search her purse and no evidence in the record suggested that the male driver, who had consented to the search, had exerted or claimed to exert some aspect of control over or an interest in the purse). Nor is it like those in which an officer first asked to whom a bag belonged and then searched it without the consent of the party claiming it. *Cf. May v. State*, 582 S.W.2d 848, 851–52 (Tex. Crim. App. [Panel Op.] 1979); *State v. Krall*, No. 13-12-00469-CR, 2013 WL 6547388, at *1 (Tex. App.—Corpus Christi Aug. 1, 2013, no pet.) (mem. op., not designated for publication).

Here, the record does not reflect that Officer Callaway knew the purse on the passenger-side floorboard was Ross's before she removed a wallet from it and found Ross's social security card inside that wallet. Nothing in the record reflects that a second purse was in the vehicle owned by Betty's mother. Thus, until Officer Callaway saw Ross's social security card, the purse she was searching could have belonged to Betty, to Betty's mother, to Ross, or based on the extra ID found in the wallet on the passenger seat, to some other person.

a governmental record with knowledge that it was obtained unlawfully); Tex. Transp. Code Ann. § 521.451 (prohibiting possession of a driver's license that one knows is fictitious or has been altered); Tex. Alco. Bev. Code Ann. §§ 106.07(a), .071 (setting forth the Class C misdemeanor offense of a minor presenting any document that indicates that she is twenty-one years of age or older to a person engaged in selling or serving alcoholic beverages); *Houghton*, 526 U.S. at 302, 119 S. Ct. at 1301 (explaining that when there is probable cause to search for contraband in a car, a passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are "in" the car); *Schenk v. State*, No. 05-14-00207-CR, 2015 WL 1243401, at *7 (Tex. App.—Dallas Mar. 16, 2015, pet. ref'd) (mem. op., not designated for publication) ("The glaring omission from the facts of *Stokvis* is the presence of drugs or other contraband found inside the vehicle providing probable cause to search other items inside the car."); *see also Dahlem v. State*, 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet. ref'd) (reciting that probable cause to search exists when reasonably trustworthy facts and circumstances within the officer's knowledge would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found and that if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search).

Viewing the evidence in the light most favorable to the trial court's ruling, we cannot say that the trial court erred by denying Ross's motion to suppress. *See Wiede*, 214 S.W.3d at 24–25. Accordingly, we overrule Ross's sole issue.

## IV. Conclusion

Having overruled Ross's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 27, 2019