

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00062-CR
_____

KENDALL RASHID DIXON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 51,880-A

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

After a traffic stop, a drug dog alerted on a vehicle driven by Kendall Rashid Dixon. Officers searched Dixon's vehicle and found drugs, including cocaine. As a result, a Gregg County jury convicted Dixon of possession with intent to deliver one or more, but less than four, grams of cocaine and sentenced him to eight years' imprisonment. In his points of error on appeal, Dixon argues that the trial court erred by failing to grant his suppression motion, which sought to suppress the physical and video evidence obtained from the traffic stop and Dixon's statement that he was responsible for the contents of the vehicle.

Except for Dixon's statement, we find that the trial court properly overruled Dixon's motion to suppress all evidence obtained from the traffic stop because the State met its burden to show that Dixon's traffic stop was legal and not excessive in intensity or scope. We also find that Dixon was not harmed by the admission of his statement accepting responsibility for the contents of the vehicle. Even so, we modify the judgment to reflect the proper description of Dixon's offense. As modified, we affirm the trial court's judgment.

## I. The Trial Court Properly Overruled Dixon's Motion to Suppress Evidence Obtained from the Traffic Stop[1]

Brant Smith, a trooper with the Texas Highway Patrol, conducted a traffic stop of a vehicle driven by Dixon. After a K-9 unit alerted to the presence of drugs in the vehicle, Smith conducted a search of the vehicle, found cocaine, and placed Dixon under arrest. Dixon filed a motion to suppress evidence obtained because of the traffic stop and argued that the trial court erred by failing to grant it. We disagree.

---

[1]We omit Dixon's complained-of statement from this analysis and address it separately in the following section.

## A.    Evidence at the Suppression Hearing

Smith testified that there was "an uptick in shootings and drug dealing" at Angie B's nightclub in Longview, Texas.  Although he had not observed Dixon at Angie B's, Smith was informed by another law enforcement officer that Dixon had left the nightclub's parking lot in a white Lincoln Town Car.  Other officers told Smith that the car was seen in a nearby hospital parking lot.

Smith testified that he spotted the Lincoln Town Car after it left the hospital and that he began following it.  Smith ran the car's Oklahoma tag, but "it did not come back to any return," indicating that the car may not have been properly registered.[2]  Smith then witnessed three traffic violations.  According to Smith, Dixon (1) "[f]ailed to stop at [a] designat[ed] stopping point, at a stop sign, designated white line," (2) "failed to signal at least 100 feet" before turning on a public roadway, and (3) failed to signal at all as he turned "into the McDonald's parking lot."  Smith's dash-camera video recording, which was played for the trial court, did not reveal the first traffic violation and was not so clear as to be conclusive of the second traffic offense, but corroborated the third traffic offense.

Smith pulled Dixon over in the parking lot and approached him.  In describing Dixon's demeanor, Smith said, "[Dixon] did not want to make eye contact, and he . . . became argumentative right off the start as soon as I made contact with him."  When Smith asked Dixon to identify himself, Dixon admitted that he did not have a driver's license.  Instead, Dixon handed Smith his identification card and told Smith that he had "a warrant out for [his] arrest."

---

[2]Smith testified that "[s]ubjects that are involved in drug trade . . . don't have anything tied to their name" to prevent a civil forfeiture.

Smith entered Dixon's information into his patrol unit's database, realized that Dixon did not have any outstanding warrant, but noted that he had prior arrests for theft offenses and possession of drugs.

According to Smith, Dixon claimed that he was coming from his girlfriend's house instead of from Angie B's and was untruthful about his criminal history. Initially, Dixon emphatically told Smith that he had "never" been arrested on any drug charge. When Smith said that the patrol unit's database showed Dixon had been arrested for drug possession, Dixon said he might have been arrested for marihuana as a child, prompting Smith to say that the prior drug charge was "not so far back in the past."

When Smith asked Dixon for consent to search the vehicle, Dixon denied Smith's request. A drug dog that was already at the scene was brought to Dixon's car and alerted when it walked around the vehicle. After the dog alerted, Smith said Dixon was not free to leave. He then searched the car, found drugs, and handcuffed Dixon.

Smith testified that he was suspicious of Dixon because he "was coming from a targeted area . . . currently under investigation due to the ongoing problems of drug transactions, shootings, fights and other problems." According to Smith, that fact, coupled with the traffic violations and Dixon's criminal history, justified the canine search. Smith testified that he had not completed the traffic stop at the time of the search, still had the option of giving Dixon a warning or a ticket for the traffic violations, and eventually decided to issue Dixon warnings for the traffic violations "[a]nd maybe a no-driver's-license citation."

4

### B.    Applicable Law and Standard of Review

"Any peace officer may arrest without warrant a person found committing a violation of [the Rules of the Road] subtitle [of the Texas Transportation Code]." TEX. TRANSP. CODE ANN. § 543.001; *see State v. Gray*, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005) (quoting TEX. TRANSP. CODE ANN. § 543.001). "The fact that the officer may have had another subjective motive for seizing [a driver]" does not invalidate "an objectively reasonable seizure." *Gray*, 158 S.W.3d at 469–70 (citing *Whren v. United States*, 517 U.S. 806 (1996)). A peace officer who undisputedly witnesses a traffic violation has "probable cause to believe [a driver has] committed an offense under the Rules of the Road statutes." *Id.* at 469.

Here, pointing to the dash-camera recording, Dixon argues that Smith did not clearly witness any traffic offense. Even so, "[a]n officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018) (quoting *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015)). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity.'" *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)).

"We review a reasonable suspicion determination by considering the totality of the circumstances." *Cortez*, 543 S.W.3d at 204 (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "When a police officer stops a defendant without a warrant, the State has the

burden of proving the reasonableness of the stop at a suppression hearing." *Id.* (citing *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim. App. 1986), *disapproved of on other grounds by Handy v. State*, 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006)). Because Dixon was arrested without a warrant, the State had the burden to prove that the initial traffic stop was legal. *See id.*; *Ford*, 158 S.W.3d at 492.

"A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion." *Id.* at 203 (quoting *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). The trial court's decision will be sustained if it is correct under any applicable theory of law. *Id.* We will reverse the trial court's ruling "only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *Id.* (quoting *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014)).

We determine whether a law enforcement officer's "reasonable suspicion of criminal activity" is supported by the totality of the circumstances using a bifurcated standard of review: "[f]irst, we 'give "almost total deference to the trial court's determination of the historical facts that the record supports," and second, we review *de novo* the trial court's application of the law to facts, which do not turn on credibility and demeanor.'" *Id.* at 203–04 (quoting *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013) (citing *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009))). Also, "we review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Id.* at 204 (quoting *Crain*, 315 S.W.3d at 49).

"When the trial court does not make explicit findings of fact, as in the case before us, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record." *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *see State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Robino v. State*, 548 S.W.3d 108, 113 (Tex. App.—Texarkana 2018, no pet.). "If the trial court's decision is correct on any theory of law applicable to the case, we will affirm the decision." *Robino*, 548 S.W.3d at 113 (citing *Ross*, 32 S.W.3d at 855–56; *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd)).

### C.     The State Met Its Burden to Show the Initial Traffic Stop Was Legal

"If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop.  The officer also may detain a person who commits a traffic violation." *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992)).  "The standard requires only 'some minimal level of objective justification' for the stop." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)).

The Texas Transportation Code requires "[a]n operator intending to turn a vehicle right or left" to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b).  The dash-camera recording showed Smith's patrol car approaching Dixon's vehicle in the dark when Dixon stopped at an intersection.  As the patrol car neared Dixon's car, Dixon used his turn signal when stopped at

the intersection. Because of the distance between Smith and Dixon, the recording does not show exactly when Dixon began using his turn signal. As a result, Dixon argues that "the videos . . . suggest that Smith could not have seen" the traffic violation. However, Smith testified that he could see Dixon's vehicle despite the distance and that "[Dixon] did not turn [his signal] on within 100 feet." As the fact-finder, the trial court was free to find Smith's testimony credible, and its determination of that historical fact is entitled to total deference.

Also, Smith testified that Dixon failed to signal at all while turning into a McDonald's parking lot, a fact corroborated by the dash-camera recording. The Texas Transportation Code requires an operator to use a signal "to indicate an intention to turn." TEX. TRANSP. CODE ANN. § 545.104(a).

Viewing the evidence in the light most favorable to the trial court's ruling, we find that the trial court properly concluded that Smith had reasonable suspicion to initiate the traffic stop.

### D. The Stop Was Not Excessive in Intensity or Scope

"An investigative stop that is reasonable at its inception may violate the Fourth Amendment because of excessive intensity or scope." *Fisher v. State*, 481 S.W.3d 403, 407 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Young v. State*, 420 S.W.3d 139, 142 (Tex. App.—Texarkana 2012, no pet.)). This is because "[a] traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop." *Lerma*, 543 S.W.3d at 190. "During a traffic stop the officer may request certain information from a driver, such as the driver's license, vehicle registration, and proof of insurance, and run a computer

8

check on that information." *Id.* "An officer is also permitted to ask drivers . . . about matters unrelated to the purpose of the stop, so long as the questioning does not measurably extend the duration of the stop." *Id.*

Immediately after Smith initially approached Dixon, Dixon admitted that he did not have a driver's license. The Texas Transportation Code requires a person to possess a valid driver's license when operating a motor vehicle on a public highway. TEX. TRANSP. CODE ANN. § 521.021; *Marzett v. McCraw*, 511 S.W.3d 210, 212 (Tex. App.—Dallas 2015, pet. denied). As a result of Dixon's admission, Smith's continued investigation was justified. *See* TEX. TRANSP. CODE ANN. § 543.001; *see also Gray*, 158 S.W.3d at 469.

As for the information gathered during the continued investigation, we note that "the officer does not need to develop reasonable suspicion that a particular crime has been or is about to be committed; rather, the facts need only suggest 'that something illegal was afoot.'" *Fisher*, 481 S.W.3d at 408 (quoting *United States v. Pack*, 612 F.3d 341, 355 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004))). "If such facts exist, 'the police [are] entitled, as long as they [act] with reasonable diligence, to pursue several plausible theories in attempting to resolve the suspicion that reasonably had been created . . . .'" *Id.* (alterations in original) (quoting *Pack*, 612 F.3d at 355).

During the investigation of the initial traffic stop and Dixon's lack of a driver's license, Dixon lied about coming from Angie B's, a nightclub known for high crime and drug

9

trafficking.[3]  "If a false answer to a particular question would suggest a suspect's involvement in criminal activity, then a possibly false answer can help to establish reasonable suspicion." *Hamal*, 390 S.W.3d at 307.  Smith also testified that Dixon (1) did not want to make eye contact, (2) was argumentative, (3) believed there was an outstanding warrant for his arrest, (4) had an arrest for a prior drug offense, (5) was driving a vehicle that was not registered to him, and (6) lied about his criminal history.  *See id.* at 308 ("a prior criminal record" and "[d]eception regarding one's own criminal record [have] also been recognized as . . . factor[s] that can contribute to reasonable suspicion").

Because less factors than the ones present here have been used to uphold a canine open-air sniff, we find that deployment of the drug dog here was justified by reasonable suspicion. *See id.* at 304–05.[4]  Also, because the drug dog was already on the scene when Dixon was stopped, the time between the stop and the open-air sniff was less than ten minutes and did not unduly prolong the traffic stop.  We conclude that the trial court did not abuse its discretion in overruling Dixon's motion to suppress the evidence obtained as a result of the traffic stop.

---

[3]Dixon argues that Smith did not see him leaving Angie B's.  Even so, under the "'collective knowledge' doctrine, when several officers are cooperating, their cumulative information may be considered in assessing reasonable suspicion or probable cause."  *State v. Martinez*, 569 S.W.3d 621, 626 (Tex. Crim. App. 2019) (citing *State v. Duran*, 396 S.W.3d 563, 569 n.12 (Tex. Crim. App. 2013)).

[4]In *Hamal*, the Texas Court of Criminal Appeals found the following factors sufficient to establish reasonable suspicion, when viewed in combination:

| | |
|---|---|
| 1. | Appellant was travelling late at night. |
| 2. | She had exceeded the speed limit. |
| 3. | She was nervous, with hands shaking. |
| 4. | She had a prior criminal record. |
| 5. | This record included arrests for drug offenses. |
| 6. | One of the drug arrests was recent, approximately seven months before the stop. |
| 7. | She responded, "No," when asked whether she had ever been in trouble before. |

*Hamal*, 390 S.W.3d at 308.

**II.    Dixon Was Not Harmed By the Failure to Suppress His Statement**

After the drug dog alerted, Smith asked Dixon if he was responsible for the contents of the vehicle, and Dixon responded that he was.  At trial, Dixon sought to suppress "one statement that [Dixon made] about . . . whether or not [what was] in his car . . . was all under his control." The State argued that, because Dixon was not handcuffed, he was not in custody when he made the statement, and the trial court impliedly agreed.  On appeal, Dixon argues that the trial court's implied ruling was erroneous and, in the absence of *Miranda*[5] or Article 38.22 warnings by Smith, the statement should have been suppressed.

The warnings required by *Miranda* and Article 38.22 of the Texas Code of Criminal Procedure are triggered when a person undergoes custodial interrogation or, in other words, the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda*, 384 U.S. at 444; *Herrera v. State*, 241 S.W.3d 520 (Tex. Crim. App. 2007); TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3.  "A person is in 'custody' . . . if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest."  *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).  Smith testified that Dixon was not free to leave after the drug dog alerted on his vehicle, and the dash-cam recording shows that a reasonable person would not believe he was free to leave.  As a result, Dixon's statement should have been suppressed.

---

[5]*Miranda v. Arizona*, 384 U.S. 436 (1966).

Even so, we turn to the question of whether Dixon was harmed by the admission of his statement. Our harm analysis is governed by Rule 44.2(a) of the Texas Rules of Appellate Procedure, which requires us to reverse unless convinced beyond a reasonable doubt that the error did not contribute to Dixon's conviction or punishment. *See* TEX. R. APP. P. 44.2(a); *see Crayton v. State*, 485 S.W.3d 488, 505 (Tex. App.—Texarkana 2016, no pet.). Our inquiry is whether "there was a reasonable possibility that the error . . . moved the jury from a state of nonpersuasion to one of persuasion" on the relevant issue. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *see Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (We are to "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence."). "[T]he burden is on the State to prove that the error made no contribution to the defendant's conviction or punishment." *Lamb v. State*, 603 S.W.3d 152, 162 (Tex. App.—Texarkana 2020, no pet.) (quoting *Williams v. State*, 958 S.W.2d 186, 194 n.9 (Tex. Crim. App. 1997)).

In making our determination, we view the entire record and consider the following factors:

> "(1) the importance of the [complained-of] evidence to the State's case; (2) whether the . . . evidence was cumulative of other evidence; (3) the presence or absence of other evidence corroborating or contradicting the [complained-of] evidence, . . . ; (4) the overall strength of the State's case"; and (5) any other factor in the record that affects the probable impact of the error.

*Crayton*, 485 S.W.3d at 505 (quoting *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007)).

12

Here, Dixon's statement was unimportant to the State given the other, overwhelming evidence of his guilt. Dixon was the only person in the vehicle when it was stopped. When Smith initially approached him, Dixon indicated that the car was his and that he had insurance on the car, suggesting that the car was under his control. The trial court properly admitted evidence showing that the drug dog alerted on Dixon's car, and there was ample testimony about the drugs, including cocaine, found inside of the car. At trial, likely because of the strength of the State's case, Dixon never claimed that the drugs were not his. Instead, his defensive strategy was to argue that the drugs were obtained in violation of his constitutional rights because "there was no real basis for [Smith] to pull [Dixon] over" and that nothing showed Dixon had intent to distribute the drugs. The State did not emphasize Dixon's statement during its opening statement, Smith's questioning at trial, or at closing argument. In light of those facts, Dixon's statement that he was responsible for the items inside the vehicle was insignificant.

We find that the admission of Dixon's statement of responsibility was not determinative of his guilt. In light of the factors discussed above, we are convinced beyond a reasonable doubt that the admission of the statement did not contribute to Dixon's conviction. As a result, we find that Dixon was not harmed by the admission of his statement and overrule this point of error.

## III.  We Modify the Judgment to Reflect the Proper Description of Dixon's Offense

Even though we have overruled Dixon's points of error, we must modify the trial court's judgment to reflect the proper description of Dixon's offense. "This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—

13

Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (quoting *Asberry*, 813 S.W.2d at 529–30).

Dixon was indicted and convicted under Section 481.112 of the Texas Health and Safety Code, which reads, "[A] person commits an offense if the person knowingly . . . possesses with intent to deliver a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a).[6] Even though Section 481.112 is titled "Manufacture or Delivery of Substances in Penalty Group 1," the trial court's judgment mistakenly states that Dixon was convicted of possession of a controlled substance, which is a separate offense under Section 481.115 of the Texas Health and Safety Code. *Compare* TEX. HEALTH & SAFETY CODE ANN. § 481.112 *with* § 481.115 (Supp.). As a result, we must modify the trial court's judgment.

---

[6]The trial court's judgment correctly identifies the statute of offense as Section 481.112.

14

**IV.     Conclusion**

We modify the trial court's judgment to reflect that Dixon was convicted of "Manufacture or Delivery of Substances in Penalty Group 1" in an amount of one or more but less than four grams.  As modified, we affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     March 30, 2023
Date Decided:       April 5, 2023

Do Not Publish