

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LEEROY RANDY SANCHEZ, | § | No. 08-24-00121-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | 143rd District Court |
| THE STATE OF TEXAS, | § | of Ward County, Texas |
| Appellee. | § | (TC# 23-06-06623-CRW) |

## OPINION

A jury found Appellant Leeroy Randy Sanchez guilty of one count of possession of a controlled substance of less than one gram, and the trial court assessed 18 months' confinement in a state jail facility and a $1,000 fine. In the trial court, Sanchez moved to suppress evidence the police found during a warrantless search of his backpack and person after he was stopped on his bicycle for a Traffic Code violation. To justify the search, the State contended that the police observed an open container with alcohol in a bottle holder affixed to his bicycle, and the police were therefore permitted to conduct a warrantless search of his backpack for additional open containers under the automobile exception. After finding drug paraphernalia in his backpack, the State maintained that the police were permitted to search Sanchez's person for additional evidence

relating to the drug paraphernalia, at which time they found methamphetamine in his pocket. The trial court denied the motion and the evidence was introduced at trial.

On appeal, Sanchez argues (1) the Penal Code's definition of "motor vehicle" is unconstitutionally vague and his bicycle cannot be considered a motor vehicle under the Code, and (2) the trial court abused its discretion by denying his motion to suppress the evidence found as the result of the warrantless search. The State concedes that the trial court erred in denying the motion but contends Sanchez did not preserve that issue for our review.

Because we conclude Sanchez properly preserved the issue and the police were not permitted to conduct a warrantless search of Sanchez's backpack, we reverse the trial court's judgment and remand for a new trial.

## I. MOTION TO SUPPRESS HEARING[1]

Sanchez was indicted on one count of the state jail felony offense of "intentionally, and knowingly, possess[ing] a controlled substance, namely methamphetamine, in an amount of less than one gram" on or about January 29, 2023. Sanchez filed a pretrial motion to suppress on the ground that any alleged controlled substance was seized without a warrant, probable cause, or other lawful authority in violation of his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 19 of the Texas Constitution. At the hearing on the motion, the only witness to testify was Rudolpho Ozuna, a patrol officer with the Ward County Sheriff's Office.

---

[1] Because Sanchez does not raise an issue regarding the sufficiency of the evidence to support his conviction, we recite only the testimony from the hearing on Sanchez's motion to suppress. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). Additional facts necessary for disposition of his appellate issues are recited below.

Ozuna testified that he was on duty on January 29, 2023, when he saw Sanchez riding his bicycle over a sidewalk onto a roadway going north at approximately 6:00 p.m. Ozuna decided to stop Sanchez because he was riding on the wrong side of the roadway. Ozuna said he intended to give Sanchez a warning for the offense. Upon approaching Sanchez, Ozuna advised him of the reason for the stop. After preparing the "warning form," he approached Sanchez a second time, at which point Ozuna saw an open beer can in the bicycle's water bottle holder. Ozuna knew it contained some alcohol but could not say how much.

Ozuna said it was standard operating procedure to search for other open containers after a first container was observed. He answered "yes" to the State's question that he did not obtain a warrant because it was a "temporary detention [sic] a traffic stop involving a vehicle that's on wheels and movable." Although Ozuna agreed that a bicycle was "not a typical motor vehicle" and a bicycle did not have "a clearly visible or defined passenger area," he believed a bicycle had "a passenger area." Ozuna said he searched the backpack that was strapped to Sanchez's person "to rule out any other open containers." Inside the backpack, he found "narcotic paraphernalia," which he described as "smoking devices." Thereafter, Ozuna searched Sanchez's pockets and found a "white crystalline substance," which the testing revealed was methamphetamine.

The trial court later denied the motion to suppress and the case proceeded to trial, during which the State introduced the evidence found in Sanchez's backpack and on his person. As discussed in more detail below, the trial court instructed the jurors that they could disregard the evidence if they found the search violated Sanchez's constitutional rights.

The jury found Sanchez guilty of "possession of a controlled substance; namely, methamphetamine in an amount of less than one gram" as charged in the indictment. Sanchez

3

elected for the trial court to assess punishment. Following a punishment hearing, the trial court assessed 18 months' confinement in a state jail facility and a $1,000 fine.

## II. DID SANCHEZ WAIVE HIS CLAIM OF ERROR?

Sanchez contends the trial court erred when it denied his motion to suppress because the warrantless search of his backpack and subsequent search of his person were unlawful. On appeal, the State agrees that the search of the backpack was not lawful. However, the State maintains Sanchez waived error because he did not object, and he affirmatively stated "no objection" when the State offered in evidence an exhibit related to the methamphetamine. Citing *Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013), Sanchez counters that the record demonstrates he did not intend for his "no objection" statement to constitute an abandonment of his claim of error, nor did the trial court construe it that way. Sanchez contends he preserved error with respect to the admission of the evidence, pointing out that he filed a pretrial motion to suppress the evidence; moved for directed verdict at trial after the State rested, expressly mentioning the pretrial motion to suppress and re-urging the same arguments that he raised in the motion; requested a jury instruction regarding the legality of the search of his backpack and person; and argued about the illegality of the search of his backpack and person in closing. We agree.

### A. Applicable law

When, as here, a trial court has denied motion to suppress, a defendant does not need to specifically object to the evidence at trial to preserve the issue for appeal. *See Thomas*, 408 S.W.3d at 881; *Garza v. State*, 126 S.W.3d 79, 84 (Tex. Crim. App. 2004); Tex. R. Evid. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."); Tex. R. App. P. 33.1(a) (prerequisites to presenting a complaint for appellate review).

4

However, as a general rule, if the defendant affirmatively asserts during trial that he has "no objection" to the admission of the complained-of evidence, he waives any error in its admission, despite the pretrial ruling. *See Thomas*, 408 S.W.3d at 881–82 (noting that defendant "must also take care not to affirmatively indicate that he has 'no objection' to the evidence that he challenged in his pretrial motion to suppress when it is later offered at trial, for this Court has long held that such an affirmative statement constitutes a 'waiver' of the right to raise on appeal the error that was previously preserved"); *Luevano v. State*, No. 08-10-00154-CR, 2012 WL 1883115, at *8 (Tex. App.—El Paso May 23, 2012, pet. ref'd) (not designated for publication) (recognizing that when defendant affirmatively states he has "no objection" to the same evidence that is later introduced at trial, he waives any error related to its admission). Nevertheless, "a rule that says carefully preserved error can nonetheless be abandoned for appeal should not apply mechanically," and appellate courts should apply the "no objection" waiver rule flexibly:

> a party need not state his objection with specificity in order to preserve error so long as the record otherwise makes it clear that both the trial court and the opposing party understood the legal basis. After all, the reason that any objection must be specific in the first place is so that the trial court can avoid the error or provide a timely and appropriate remedy, and the opposing party has an opportunity to respond and, if necessary, react. So long as it appears from an appellate record that these policies have been satisfied, it should not matter to the appellate court whether the objecting party used a particular "form of words"—or any particular words at all, if meaning is adequately conveyed by context.

*Thomas*, 408 S.W.3d at 884–85.

Therefore, the rule that a later statement of "no objection" will forfeit earlier-preserved error is context-dependent. *See id*. An appellate court "should not focus exclusively on the statement itself, in isolation, but should consider it in the context of the entirety of the record." *Id.* at 885. "If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error

5

that he had earlier preserved for appeal, then the appellate court should not regard the claim as 'waived,' but should resolve it on the merits." *Id.*

## B. Review of the trial record

Because of the trial court's suppression-motion ruling, Sanchez had no need to object when the State called witnesses who testified about the methamphetamine. However, several exhibits were admitted related to the methamphetamine, to which Sanchez stated, "no objection." Exhibit 9 was a photograph from Ozuna's body camera that showed him holding the baggie containing the methamphetamine found in Sanchez's pocket. Exhibit 10A contained the methamphetamine. Exhibit 10B was an evidence bag that contained the original packaging, which was the plastic bag with a piece of plastic and a Ziplock bag into which the Texas Department of Public Safety forensic scientist placed the white crystalline substance. Finally, Exhibit 11 was the Department of Public Safety Office Crime Lab report showing the results of the analysis of the white substance.

Because the question of whether defense counsel's "no objection" statement will forfeit his earlier-preserved error is context-dependent, we do not focus on the "no objection" statement in isolation. *Thomas*, 408 S.W.3d at 885. Instead, we must review the record to determine whether it plainly demonstrates that Sanchez did not intend, and the trial court did not construe, his attorney's "no objection" statements as abandoning his claim of error. *See id.* at 885–86. We conclude it did not.

During opening argument at trial, the State told the jury that Ozuna saw "an open can of Coors in that [water bottle] holder. That's an open container . . . ." Defense counsel objected that the Penal Code section for motor vehicles did not apply to bicycles. Outside the presence of the jury, counsel requested and was granted a running objection: "with respect to the open container that you refer to, you may consider this a running objection to references to an open container."

While on the stand, both the State and defense counsel questioned Ozuna about his belief that he had probable cause to search Sanchez's backpack and pockets. Ozuna stated he believed Sanchez's bicycle was a "motor vehicle" to which the open container law applied, as it was "self-propelled by his legs." Ozuna further testified that he believed Sanchez's backpack constituted the passenger compartment, which he searched for additional open containers under the "automobile exception," which allows for the warrantless search of an automobile when the officer has probable cause to believe there is evidence of the commission of a crime in the vehicle.[2] At the close of evidence, Sanchez moved for a directed verdict:

> *Second, this one was argued at the suppression hearing, but today, I just want to reiterate that we do believe that the search of the Defendant's backpack was unlawful.* The open container statutes apply to motor vehicles and only to passenger compartments of a motor vehicle. I don't believe that the bicycle in this case qualifies as a motor vehicle or that the Defendant's backpack qualifies as the passenger compartment of a motor vehicle under the law based on the evidence presented. I don't believe any rational juror could so find that either of those two, either the stop or the search. For those reasons, we would ask the Court for a directed verdict of not guilty. (Emphasis added.)

The court denied the motion.

Before closing argument, the trial court instructed the jury that "no evidence obtained by an officer or other person in violation of any provisions of the constitution or the laws of the State of Texas or the constitution or the laws of the United States of America shall be admitted in evidence against the accused on the trial of any criminal case." In closing, defense counsel continued with his theme that the open container law did not apply because a bicycle is not a motor

---

[2] Somewhat confusingly, at trial, when Ozuna was asked about the automobile exception, he indicated his belief that it did not apply, testifying that: "The automobile exception wasn't applicable in this case because the vehicle was never going to be released. He was in my possession at the time. We observed the violation which I perceived it to be the open container and that's when I conducted the search of the container, the container being his backpack." However, at all other times, he appears to have relied on the exception to conduct his search, and he provided no other justification for searching the backpack.

vehicle, there is no "passenger compartment," and the search of the backpack was unlawful.

Counsel argued that because the search of the backpack (which revealed the "narcotic paraphernalia") was unlawful, the subsequent search of Sanchez's person (which revealed the methamphetamine) also was unlawful as fruit of the poisonous tree:

> Is a bicycle a motor vehicle? Common sense says no. If it's not a motor vehicle, then they can't have an open container because the open container only applies to motor vehicles, and even if it was a vehicle, you can only search the passenger compartment.
>
> And is a backpack that someone is wearing when they're not in an enclosed vehicle, is that really permissible to search? I say it's police overreaching. I say they exceeded the scope of the constitution. I say anything obtained as a result should be voided basically as if it never happened. Evidence can't [be] considered if it's obtained against or a violation of the constitution. If you don't consider that evidence, then you don't consider what was found after that and this case is a not guilty. I encourage you to look at Paragraph 7 and 8 which explain the detention and search. Those instructions are there. The definitions are there. It's a step-by-step analysis, and I'm convinced that once you look at that and apply your common sense to it and remember what the evidence was that we heard, you will come to the right decision.

Paragraph 7 of the jury charge reminded the jurors that evidence unlawfully obtained could not be admitted in evidence against Sanchez, and if they did not "find beyond a reasonable doubt that [] Ozuna had a reasonable suspicion to believe [Sanchez] was connected to some activity related to a crime or criminal offense proceeding [Sanchez's] detention by [] Ozuna, or if [they] have a reasonable doubt thereof, [they] will disregard any and all evidence obtained as a result of [Sanchez's] detention and [they] will not consider such evidence for any purpose."

Paragraph 8 informed the jury that "[a] person commits an offense if the person knowingly possesses an open container in a passenger area of a motor vehicle that is located on a public highway." The charge defined "motor vehicle" as "a device in, on, or by which a person or property is or may be transported or drawn on a highway, except a device used exclusively on stationary rails or tracks." It defined "passenger area of a motor vehicle" as "the area of a motor vehicle

8

designed for the seating of the operator and passengers of the vehicle." The jury was instructed under Texas Code of Criminal Procedure Article 38.23 as follows:

> You are further instructed that once an officer locates an open container within the passenger compartment a motor vehicle he has probable cause to search the passenger area of the motor vehicle for additional open containers.

> Now, if you find from the evidence, beyond a reasonable doubt, that on the occasion in question Deputy Rodolpho Ozuna had probable cause to search the backpack worn by the defendant, Leeroy Randy Sanchez, as part of the passenger area of a motor vehicle, you may consider the evidence obtained as a result of that search.

> However, if you do not so find beyond a reasonable doubt that Deputy Rodolpho Ozuna had probable cause to search the defendant's backpack, as part of the passenger area of a motor vehicle, or if you have a reasonable doubt thereof, you will disregard any and all evidence obtained as a result of this search and you will not consider such evidence for any purpose.

### C. Analysis

Sanchez's statements that he had "no objection" to admitting the four exhibits were not accompanied by any previous or contemporaneous reminders to the trial court or the State that his suppression motion had covered this evidence. However, Sanchez had objected to the State's characterization of the bicycle as a "motor vehicle" and was granted a running objection as to any reference to the applicability of the open container law to bicycles. The primary focus of Ozuna's examination by both the State and Sanchez was Ozuna's understanding of the open container law and whether he had probable cause to search the backpack on that basis.

At the close of evidence, Sanchez requested a directed verdict, referencing the suppression hearing at which he challenged the legality of the search of Sanchez's backpack. Although the request was denied, the trial court twice—at the close of evidence and in the jury charge—instructed the jury that no unlawfully obtained evidence could be admitted against Sanchez. Finally, Sanchez argued in closing that the search of the backpack and his person was unlawful.

9

Under these circumstances, the record as a whole plainly shows that Sanchez did not intend his "no objection" statements to constitute an abandonment of the claim of error he had earlier preserved for appeal. The trial court understood Sanchez was continuing his challenge to the legality of the backpack search, as it granted him a running objection to the applicability of the open container law to bicycles, heard his motion for a mistrial, and instructed the jury accordingly. Therefore, we conclude that Sanchez did not waive his complaint. We next consider the legality of the search.

## III. WHETHER SANCHEZ'S RIGHTS WERE VIOLATED BY THE SEARCH OF HIS BACKPACK AND PERSON

Sanchez concedes that Ozuna justifiably detained him for riding his bicycle on the wrong side of the road. But he maintains that Ozuna did not have probable cause to believe he was committing a crime by having an open container on his bicycle. Alternatively, he argues, even it were a crime to have the open container on his bicycle, Ozuna was not justified in conducting a warrantless search of his backpack.

Although the State took a different stance in the trial court, in its briefing on appeal, it concedes that Ozuna did not have probable cause to search Sanchez's backpack. A concession of error by the State, however, is not conclusive on appeal; an appellate court is still required to independently review the appellant's issue. *See Estrada v. State*, 313 S.W.3d 274, 286 (Tex. Crim. App. 2010) (recognizing that a reviewing court must still independently examine the confessed error). As such, we consider the merits of this issue.

In conceding error, the State posits that Ozuna did not have probable cause to believe that the backpack would contain any additional open containers, as he claimed at trial was the basis for his search. The State relies on *Davis v. State*, in which the court held that a police officer who was

10

conducting a weapons search during a Terry stop did not have reasonable suspicion to open a matchbox found in the defendant's pocket, as "the search had to be limited to the discovery of weapons that could reasonably harm the officer," and it was unreasonable for the officers to believe the matchbox might contain a weapon that could harm them. *Davis v. State*, 829 S.W.2d 218, 220–21 (Tex. Crim. App. 1992) (en banc). The State contends that Ozuna similarly could not have reasonably believed that "additional open containers would be found in Appellant's backpack." We conclude, however, that it was reasonable for Ozuna to believe that the backpack may have contained additional open containers.[3] Thus, we do not accept the State's concession of error as a valid basis for the trial court's decision to deny Sanchez's motion to suppress the evidence of the search. We must therefore determine whether there was an independent basis for the trial court's decision.

### A. Standard of review

We review a trial court's ruling on a motion to suppress for an abuse of discretion, and we do so under a bifurcated standard of review. *State v. Torres*, 666 S.W.3d 735, 740 (Tex. Crim. App. 2023). "On the one hand, we afford almost total deference to the trial court's determination of historical facts and the trial court's rulings on mixed questions of law and fact, especially when those determinations are based on an assessment of credibility and demeanor." *Id.* "On the other hand, we review pure questions of law, as well as mixed questions of law and fact that do not turn on an assessment of credibility and demeanor, on a de novo basis." *Id.* at 740–41. And to the extent

---

[3] In the trial court, the prosecutor asked Ozuna if he was aware of the "packaging of any liquor bottles" such as "airline type liquor bottles or anything else that would be a similar size of the [pipe] that [he] did find" in Sanchez's backpack, and Ozuna responded in the affirmative, adding that the pipe was the "same size as liquor bottles that [he was] familiar with." As explained below, the Penal Code definition of an open container includes any "receptacle that contains any amount of alcoholic beverage and that is open, that has been opened, that has a broken seal, or the contents of which are partially removed." Tex Penal Code. Ann. § 49.031(1)(1).

our decision turns on the interpretation of a statute, we resolve the issue as a question of law. *See State v. Vasilas*, 187 S.W.3d 486, 488 (Tex. Crim. App. 2006) (recognizing that statutory construction is a question of law).

We will sustain a trial court's denial of a motion to suppress if it is correct on any applicable theory of law and the record reasonably supports it. *State v. Arellano*, 600 S.W.3d 53, 57–58 (Tex. Crim. App. 2020). "This is so even if the trial judge gives the wrong reason for the decision." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (en banc).

When, as here, the trial court does not enter findings of fact and conclusions of law, we infer the necessary fact findings that support the trial court's ruling if the record evidence viewed in the light most favorable to the ruling supports those implied findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Thus, the party that prevailed in the trial court "is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id.*

## B. Applicable law: warrantless searches and the automobile exception

The purpose of both the Fourth Amendment to the U.S. Constitution and Article I, § 9 of the Texas Constitution is to safeguard a person's legitimate expectation of privacy from unreasonable governmental intrusions. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (en banc); *see* U.S. Const. amend. IV; Tex. Const. art. I, § 9. "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. Ann. art. 38.23(a).

A defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant

satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.* The burden of proof then shifts to the State to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.*; *see also Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003). Under the Fourth Amendment, "a warrantless search is *per se* unreasonable unless it falls within a warrant exception." *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (recognizing that are various exceptions to the unconstitutionality of a warrantless search of property).

At issue in this case is the "automobile exception" to the warrant requirement. "Under the automobile exception, an officer may conduct a warrantless search of an automobile if it is readily mobile and he has probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (citing *California v. Carney*, 471 U.S. 386, 393 (1985); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)). Probable cause to search exists when there is a "fair probability" of finding inculpatory evidence in the location being searched. *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008).

The U.S. Supreme Court has explained the justifications for the automobile exception: "the 'ready mobility of the automobile' and 'the pervasive regulation of vehicles capable of traveling on the public highways.'" *Collins v. Virginia*, 584 U.S. 586, 586 (2018) (quoting *Carney*, 471 U.S. at 390, 392)). In other words, (1) the "ready mobility" creates an exigency, and (2) the privacy expectation with respect to one's vehicle is significantly less than the privacy expectation, for example, in one's home. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *Keehn*, 279 S.W.3d at 335.

If the automobile exception applies, police officers with probable cause may search the vehicle and passengers' belongings in the vehicle that can conceal the object of a search. *See Wyoming v. Houghton*, 526 U.S. 295, 307 (1999); *see also Neal*, 256 S.W.3d at 282 ("If this exception applies, then the police may search 'every part of the vehicle and its contents that may conceal the object of the search.'" (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982))).

## C. Analysis

While Sanchez concedes that his initial detention for riding a bicycle on the wrong side of the road was lawful, he maintains Ozuna did not have probable cause to believe he was engaging in criminal conduct. Although Ozuna observed an open container on his bicycle, he asserts that the Penal Code does not make it a crime to have an open container on a bicycle. Sanchez therefore contends Ozuna lacked probable cause to believe that his backpack contained any evidence of a crime.

The Penal Code provides that "[a] person commits an offense if the person knowingly possesses an open container in a passenger area of a motor vehicle that is located on a public highway, regardless of whether the vehicle is being operated or is stopped or parked." Tex. Penal Code § 49.031(b).[4] It defines an "[o]pen container" to mean "a bottle, can, or other receptacle that contains any amount of alcoholic beverage and that is open, that has been opened, that has a broken seal, or the contents of which are partially removed." Tex. Penal Code Ann § 49.031(a)(1). The term "motor vehicle" "has the meaning assigned by [Penal Code] Section 32.34(a)." *Id.* § 49.01(3).

---

[4] Penal Code § 49.031 provides that the term "'[p]ublic highway' means the entire width between and immediately adjacent to the boundary lines of any public road, street, highway, interstate, or other publicly maintained way if any part is open for public use for the purpose of motor vehicle travel. The term includes the right-of-way of a public highway." Tex. Pen. Code Ann. § 49.031(3). The Texas Transportation Code contains additional definitions of the words, "highway" and "roadway." *See* Tex. Transp. Code Ann. §§ 221.001(1); 541.302(5); 541.302(11). Sanchez does not dispute that he was riding the bicycle on a public highway within the meaning of the Code.

14

Section 32.34 defines "motor vehicle" as "a device in, on, or by which a person or property is or may be transported or drawn on a highway, except a device used exclusively on stationary rails or tracks." *Id.* § 32.34(a)(2). The "passenger area of a motor vehicle" is defined as "the area of a motor vehicle designed for the seating of the operator and passengers of the vehicle." *Id.* § 49.031(a)(2). "The term does not include: (A) a glove compartment or similar storage container that is locked; (B) the trunk of a vehicle; or (C) the area behind the last upright seat of the vehicle, if the vehicle does not have a trunk." *Id.* § 49.031(a)(2).

Ozuna argues that his bicycle could not be considered a "motor vehicle" within the meaning of the open container law because it has no motor and is not self-propelled. He further notes that the Code makes it an offense to have an open container in "a passenger area of a motor vehicle that is located on a public highway." *Id.* § 49.031(b). And he urges that there is no such passenger area in a bicycle. Thus, according to Sanchez, because Ozuna did not have probable cause to believe that he had committed an open container offense, Ozuna lacked probable cause to believe that Sanchez was committing a crime or that his backpack would contain evidence of any such crime.

In the trial court, however, the State maintained that Sanchez's bicycle could be considered a motor vehicle under the Penal Code definition regardless of its lack of a motor, given that Code's broad definition of the term.[5] And, the State argued, the bicycle had a "passenger area" within the meaning of the Penal Code because it had a place for "a guy to sit on, peddle his bicycle, drive down the road, carry his backpack, and operate the bicycle." In turn, the State maintained, because

---

[5] Unlike the Transportation Code, the Penal Code does not specify that a "motor vehicle" must be self-propelled. The Texas Transportation Code defines "motor vehicle" to mean "a self-propelled vehicle or a vehicle that is propelled by electric power from overhead trolley wires. The term does not include an electric bicycle or an electric personal assistive mobility device, as defined by Section 551.201." Tex. Transp. Code Ann. § 541.201(11).

Sanchez was "sitting on a seat" in the passenger area of his bicycle with an open beer can in his bottle holder, he was engaged in a violation of the open container law.

Neither party has cited case law supporting its respective position, and we have not found any Texas case resolving the question of whether a bicycle is considered a motor vehicle for purposes of the open container law. But we need not answer that question because even if we were to conclude that Sanchez was in violation of the open container law, we agree with Sanchez that Ozuna had no justification for searching his backpack without a warrant.

As set forth above, a police officer who has probable cause to believe that a vehicle may contain evidence of a crime may conduct a warrantless search of the passenger compartment under the automobile exception, to include containers within the passenger compartment that may contain such evidence. *See Robino v. State*, 548 S.W.3d 108, 113 (Tex. App.—Texarkana 2018, no pet.) (citing *California v. Acevedo*, 500 U.S. 565, 570–71 (1991); *Houghton*, 526 U.S. at 301). In the trial court, the State argued the backpack was in the "passenger compartment" of Sanchez's bicycle, and Ozuna was therefore permitted to search its contents under the automobile exception to the warrant requirement.[6] According to the State, the bicycle's passenger compartment was where both Sanchez and his backpack were located at the time of his detention; therefore, the State contends, Ozuna had the right to search Sanchez's backpack for additional open containers after observing the beer can in his water bottle holder. Under the facts of this case, we disagree.

As a preliminary matter, we note that courts outside of Texas have held that police can search a bicycle under the automobile exception when there is probable cause to believe the bicycle might contain evidence of a crime, given that a bicycle, like an automobile, is readily mobile, albeit

---

[6] At times, the State appeared to be arguing that the backpack was the "passenger compartment" itself, and Ozuna appeared to be making this argument as well in his testimony.

slower. *See State v. Gamboa*, 543 So. 2d 1129, 1132 (La. Ct. App. 1989), writ denied, 550 So. 2d 646 (La. 1989); *People v. Allen*, 78 Cal. App. 4th 445, 449, (2000) (recognizing the applicability of the automobile exception to searches of a bicycle, given their mobile nature). In *Gamboa*, the court observed that the police had "probable cause to believe that the defendant was transporting contraband" on his bicycle, and given the mobile nature of the bicycle, the police could search a compartment behind the defendant's bicycle seat without a warrant under the automobile exception to the warrant requirement. *Gamboa*, 543 So. 2d at 1130, 1132. Similarly, in *Allen*, because the police had probable cause to believe that the defendant was transporting contraband on his bicycle and had concealed the contraband in the bicycle's handlebar, the police could search the bicycle itself under the automobile exception. *Allen*, 78 Cal. App. 4th at 450–51.

We further note that courts have generally held that "containers attached to a vehicle, whether a motorcycle or a car [or in our case a bicycle], are considered 'in' the vehicle for purposes of the Fourth Amendment." *See People v. Needham*, 79 Cal. App. 4th 260, 267, (2000) (holding that bags attached to a motorcycle "should be treated like any other closed receptacle for purposes of the Fourth Amendment because the bag is a part of the vehicle just like any other compartment or receptacle"); *see also Schwasta v. U. S.*, 392 A.2d 1071, 1073 (D.C. 1978) (analogizing motorcycle saddlebags to the passenger compartment of an automobile: "the unlocked saddlebags were equivalent to the passenger compartment of an unlocked automobile from which personal property easily could be removed by others").

However, in the present case, it is undisputed that the backpack Ozuna searched was not part of the bicycle itself nor was it attached to the bicycle; instead, it was strapped to Sanchez's person. This distinction is significant, as the U.S. Supreme Court has repeatedly recognized that "the scope of the automobile exception extends no further than the [vehicle] itself." *Collins*, 584

17

U.S. at 594; *see also Labron*, 518 U.S. at 940 (explaining that the automobile exception "permits police to search the vehicle"); *Houghton*, 526 U.S. at 300 ("[T]he Framers would have regarded as reasonable (if there was probable cause) the warrantless search of containers *within* an automobile"). We are not aware of any case in which the automobile exception was applied to the warrantless search of items, containers, or compartments that were not within or attached to the subject vehicle.

To the contrary, in a similar situation, a Florida court held that the police could not rely on the automobile exception to search a backpack that a dirt bike operator was wearing on his person—even assuming the dirt bike qualified as a vehicle for purposes of the exception—as the "backpack was not part of the dirt bike nor stored on or in it." *See, e.g.*, *Harris v. State*, 238 So. 3d 396, 403 (Fla. Dist. Ct. App. 2018). And in *Chung v. State*, our sister court pointed out that while "law enforcement may search an automobile and the containers *within it* where they have probable cause to believe contraband or evidence is contained," they could not search the defendant's cell phone, as it was not in his car when the officers searched the vehicle after a drug dog alerted to narcotics in the vehicle; "[r]ather it was with [the defendant]" at the time. *Chung v. State*, 475 S.W.3d 378, 387 (Tex. App.—Waco 2014 pet. ref'd) (citing *Acevedo*, 500 U.S. at 580) (emphasis added).

Similarly, we hold that the automobile exception did not apply to the warrantless search of Sanchez's backpack, as the backpack was not a part of the bicycle or attached to it, and was instead strapped to Sanchez's back. Thus, although the bicycle itself was subject to search, the backpack

was not, and the police were not justified in searching it without a warrant under the automobile exception.[7]

In turn, the only basis for the search of Sanchez's pockets, where the methamphetamine was found, was based on the evidence Ozuna found in the illegal search of Sanchez's backpack, i.e., the drug paraphernalia. In other words, the methamphetamine was only acquired as the direct result of the initial illegal search of Sanchez's backpack. It therefore should have been excluded from trial. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (recognizing that the "exclusionary prohibition" against admitting evidence that was obtained during an unlawful search applies to "the indirect as well as to direct products of such invasions"); *see also Crosby v. State*, 750 S.W.2d 768, 780 (Tex. Crim. App. 1987) (en banc) (recognizing that "the only indirectly acquired evidence that should be suppressed is that which was acquired by an exploitation of the unconstitutional intrusion").

For these reasons, we conclude the trial court erred by denying Sanchez's motion to suppress.

## IV. HARM ANALYSIS

Having concluded that the trial court erred by denying Sanchez's motion to suppress, we must analyze whether that error was harmless. Because admitting the fruit of the unlawful search of his backpack and person violated Sanchez's Fourth Amendment rights, we consider whether admission of this evidence constituted reversible error under Texas Rule of Appellate Procedure 44.2(a). *See Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001) (recognizing when evidence has been admitted in violation of the Fourth Amendment, the proper harm analysis is

---

[7] In making this determination, we are not suggesting that there could never be a situation in which the warrantless search of a backpack may be justified.

19

"the constitutional one of Rule of Appellate Procedure 44.2(a)"); *Lopez v. State*, 615 S.W.3d 238, 265 (Tex. App.—El Paso 2020, pet. ref'd) ("We review the harm resulting from a trial court's erroneous denial of a motion to suppress evidence obtained in violation of the Fourth Amendment under the constitutional harmless-error standard of Texas Rule of Appellate Procedure 44.2(a).").

For purposes of constitutional error, Rule 44.2(a) provides that the defendant's judgment of conviction or punishment must be reversed "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). Under Rule 44.2(a), the question is whether the error "adversely affected the integrity of the process leading to the conviction," not whether "the jury verdict was supported by the evidence." *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). Accordingly, we focus "not upon the perceived accuracy of the conviction or punishment, but upon the error itself in the context of the trial as a whole, in order to determine the likelihood that it genuinely corrupted the fact-finding process." *Snowden v. State*, 353 S.W.3d 815, 819 (Tex. Crim. App. 2011).

Factors a court may consider in assessing harm under Rule 44.2(a) include the nature of the error, whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to the error. *Id*. at 822. However, these factors are not exclusive, and there is no set formula for conducting a harm analysis that necessarily applies uniformly to every case and every type of constitutional error. *Id*.; *Lopez*, 615 S.W.3d at 265. "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment." *Snowden*, 353 S.W.3d at 822 (internal quotation marks omitted).

Here, we find the nature of the error in denying Sanchez's motion to suppress the evidence of the illegal search was highly significant, as the only evidence admitted at trial to support Sanchez's conviction was the fact that Ozuna found methamphetamine in Sanchez's pocket during the illegal search. The State had no choice but to emphasize the illegally obtained evidence at trial, as it formed the sole basis for the State's theory that Sanchez was guilty of possessing methamphetamine. Similarly, because no other evidence in the record could have supported the jury's finding that Sanchez possessed methamphetamine, the jurors undeniably would have assigned great weight to the illegally obtained evidence.

Therefore, we cannot conclude beyond a reasonable doubt that the trial court's error in denying Sanchez's motion to suppress the evidence did not contribute to his conviction or punishment. *See McQuarters v. State*, 58 S.W.3d 250, 258 (Tex. App.—Fort Worth 2001, pet. ref'd) (where defendant was charged with possession of marijuana and the only evidence showing that he possessed marijuana was obtained during an unreasonable detention that violated his Fourth Amendment rights, court was "unable to determine beyond a reasonable doubt that the trial court's denial of [his] motion to suppress the marijuana did not contribute to [his] conviction or punishment"); *see also Carillo v. State*, No. 05-12-00544-CR, 2014 WL 465424, at *6 (Tex. App.—Dallas Feb. 4, 2014, no pet.) (mem. op., not designated for publication) (where evidence of drugs found in the defendant's truck during an illegal search in violation of his Fourth Amendment rights was the only evidence at trial establishing that he possessed cocaine, the admission of the evidence was harmful under standard for constitutional error).

We therefore sustain Sanchez's second issue.[8]

---

[8] In light of our disposition of Sanchez's second issue on appeal, we need not reach Sanchez's first issue in which he contends that the definition of a "motor vehicle" in §32.34 is unconstitutionally vague. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised

## V. CONCLUSION

For the reasons stated above, we conclude that the trial court committed reversible error in denying Sanchez's motion to suppress the evidence obtained from the search of his backpack and his person. Accordingly, we reverse the trial court's judgment and remand this cause to the trial court for a new trial.[9]

LISA J. SOTO, Justice

July 31, 2025

Before Salas Mendoza C.J., Palafox and Soto, JJ.

(Publish)

---

and necessary to final disposition of the appeal."). In any event, we would conclude that Sanchez did not preserve this issue for our review, as at trial, he did not make either an as-applied or facial challenge to the constitutional validity of the statute itself. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (holding appellant waived his vague-as-applied challenge because he did not specifically raise the issue at trial). At most, defense counsel objected to the prosecutor's use of the term "open container" during his opening statement contending that "[t]he penal code for the motor vehicle is not applicable to a bicycle and open containers is unconstitutional" and asking for a "running objection" to the term through the trial. However, defense counsel did not elaborate on or specify his constitutional objection. *See Sony v. State*, 307 S.W.3d 348, 353 (Tex. App.—San Antonio 2009, no pet.) (noting that nothing in the record established appellant specifically asserted at trial that the statute was facially vague or vague as applied to him).

[9] We decline Sanchez's request to render a judgment of acquittal in his favor, rather than remand for a new trial. *See Schmidt v. State*, 659 S.W.2d 420, 421–22 (Tex. Crim. App. 1983) (rejecting appellant's request to enter a judgment of acquittal based on the trial court's error in admitting unlawfully seized evidence, recognizing that "[t]he admission of the unlawfully seized evidence was trial error, and the proper remedy is to reverse the conviction and remand the cause for a new trial") (citing *Adams v. State*, 639 S.W.2d 942, 943 (Tex. Crim. App. 1982)).